**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valon Nikoliqi, et al., | No. CV-25-02382-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Pamela Bondi, et al., | |
| Defendants. | |

In March 2021, Valon Nikoliqi ("Valon"), his spouse Jetmira Nikoliqi ("Jetmira"), and their children KN and EN (collectively, "Plaintiffs") applied for asylum.  To date, Plaintiffs' application remains unadjudicated.  In this action, Plaintiffs have sued a variety of federal officials ("Defendants") under a variety of theories, including that this delay is unreasonable and violates the Administrative Procedure Act ("APA").

Now pending before the Court is Defendants' motion to dismiss.  (Doc. 7.)  For the reasons that follow, the motion is granted.

**BACKGROUND**

I.    Factual Allegations

Plaintiffs are "natives and citizens of Kosovo" and "currently reside as a family unit [in] Scottsdale, Arizona."  (Doc. 1 ¶¶ 11, 16.)

On November 17, 2020, Plaintiffs "fled their native country of Kosovo . . . to seek asylum in the United States."  (*Id.* ¶ 1.)  Plaintiffs "entered the United States . . . on a B1/B2 visitors visa."  (*Id.* ¶ 17.)

On March 11, 2021, Plaintiffs "filed their I-589 application for asylum with USCIS [United States Citizenship and Immigration Services]." (*Id.* ¶ 18; Doc. 1-1 at 3-34 [I-589 Application for Asylum and for Withholding of Removal]; *id.* at 36 [USCIS I-589 Receipt Notice].) "Plaintiffs were subsequently scheduled by USCIS for collection of their biometrics on April 30, 2021, [November 13], 2023, and . . . March 26, 2025." (Doc. 1 ¶ 19; Doc. 1-1 at 38-49.)[1]

On February 4, 2025, "Plaintiffs, through their counsel, contacted the USCIS asylum office requesting that they be scheduled for an interview on their asylum application." (Doc. 1 ¶ 20; Doc. 1-1 at 51.) That same day, "[Valon] provided supplemental evidence in the form of an updated affidavit and additional supporting evidence to the asylum office." (Doc. 1 ¶ 20; Doc. 1-1 at 53-59.)

On February 27, 2025, "the Los Angeles Asylum Office acknowledged receipt of the interview request and supplemental evidence and requested [KN] appear for biometrics at a USCIS Application Support Center ('ACS')." (Doc. 1 ¶ 21; Doc. 1-1 at 61.)[2]

On March 4, 2025, "USCIS issued an ASC Notice for [KN] to appear for biometrics on March 26, 2025, despite KN having been previously fingerprinted in 2021, and 2023." (Doc. 1 ¶ 22.)

The complaint alleges that "[t]o date, Plaintiffs have not been scheduled for an asylum interview . . . despite Plaintiffs having filed their asylum application over four (4) years ago." (*Id.* ¶ 23.)

…

---

[1]    Although the complaint alleges that Plaintiffs were scheduled for collection of their biometrics on March 11, 2023, Exhibit 3, attached to the complaint, reveals that date was actually November 13, 2023. (Doc. 1-1 at 44.) "Although [courts] normally treat all of a plaintiff's factual allegations in a complaint as true, [courts] need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (quotation omitted).

[2]    Although the complaint alleges that this acknowledgement took place on February 27, 2027, a date that has yet to occur, Exhibit 6, attached to the complaint, reveals that date was actually February 27, 2025. (Doc. 1-1 at 61.)

II.    Procedural History

On July 8, 2025, Plaintiffs filed the complaint.  (Doc. 1.)  Plaintiffs "ask[] this Court to compel Defendants, officers of the United States, to perform their duty owed under" the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(d)(5)(A)(ii)-(iii).  (*Id.* ¶ 6.)

The complaint asserts five claims.  Count One is brought under § 706(1) of the APA; Count Two is brought under § 706(2)(C) of the APA; Count Three is brought under § 706(2)(A)'s "not in accordance with law" provision; Count Four is brought under § 706(2)(A)'s "arbitrary, capricious, [or] an abuse of discretion" provision; and Count Five is brought under the Mandamus Act, 28 U.S.C. § 1361.

On November 11, 2025, Defendants filed the pending motion to dismiss.  (Doc. 7.) The motion is now fully briefed (Docs. 8, 9) and neither side requested oral argument.

**DISCUSSION**

I.    Legal Standard

A.    **Rule 12(b)(1)**

A defendant may move to dismiss an action for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  "Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways.  A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted). "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings."  *Id.*  The plaintiff bears the burden of establishing that subject-matter jurisdiction exists.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

B.    **Rule 12(b)(6)**

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

## II.   Relevant Legal Background

Section 1158 of the INA governs the process by which aliens may seek asylum in the United States. 8 U.S.C. § 1158. As part of that process, "in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed," and, likewise, "in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." 8 U.S.C. § 1158(d)(5)(A)(ii)-(iii). However, § 1158(d)(7), entitled "No private right of action," provides that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."

## III.   Analysis

### A.   **Counts One And Five**

In August 2025, in *Kayiranga v. Mayorkas*, 2025 WL 4036696 (D. Ariz. 2025), this Court addressed many of the same legal issues and arguments presented in this case. In *Kayiranga*, the plaintiff alleged—just as Plaintiffs allege here in Counts One and Five—that the defendants' unreasonable delay in adjudicating his asylum application violated the APA and/or was actionable under the Mandamus Act. *Id.* at *1. The defendants, in turn, moved to dismiss under Rules 12(b)(1) and 12(b)(6). *Id.* at *1-2.

Beginning first with jurisdiction, the defendants in *Kayiranga*, just like Defendants here (Doc. 7 at 9), argued that "the Court lacks jurisdiction over Plaintiff's claims because (1) a statute precludes judicial review, and (2) this agency action is committed to agency discretion by law." *Kayiranga*, 2025 WL 4036696 at *2. The Court rejected both arguments. In a nutshell, the Court held that the defendants "[had] not shown by clear and convincing evidence that Congress, in enacting § 1158(d)(7), intended to preclude judicial review of delayed-adjudication claims in the asylum context" and that although "§ 1158(d)(5)(A)(iii) confers discretion, in 'exceptional circumstances,' over *when* to adjudicate asylum claims," "this discretion does not grant Defendants *carte blanche* to ignore Plaintiff's application indefinitely." *Id.* at *3-4. The Court also explicitly rejected and distinguished the cases Defendants now cite in support of their arguments. *Id.* at *4-5. Ultimately, the Court determined that it had subject-matter jurisdiction over the plaintiff's claims, and the same is true here as to Counts One and Five.

Turning to the merits, in *Kayiranga*, the Court began by noting that "[b]ecause mandamus relief and relief under the APA are in essence the same . . . the Court will limit its Rule 12(b)(6) analysis to Plaintiff's APA claim." *Id.* at *6 (citing *Vaz v. Neal,* 33 F.4th 1131 (9th Cir. 2022)). The Court went on to reject the defendants' argument, also made by Defendants here, that "USCIS's decision to deviate from the timelines provided § 1158(d)(5)(A) is not the sort of mandatory, discrete agency action necessary to give rise to a claim under § 706(1)," holding that "[w]hen § 1158 is read in conjunction with the APA's reasonableness requirements, not to mention the agency's implementing regulations, USCIS is required to adjudicate Plaintiff's asylum application within a reasonable period of time. This constitutes a 'specific, unequivocal command' sufficient to state a claim under § 706(1)." *Id.* That analysis applies here as to Counts One and Five.

Finally, in *Kayiranga*, as here, "[t]he parties agree that an unreasonable-delay claim under the APA is governed by standards set forth in *Telecomms. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984)." *Id.* at *8. Known as the *TRAC* factors, the "'hexagonal contours' of the *TRAC* standard are as follows":

(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* (citing *Telecomms. Research & Action Ctr.*, 750 F.2d at 80).

In *Kayiranga*, the Court rejected the plaintiff's argument—which Plaintiffs repeat here—that the *TRAC* factors could not be applied at the motion to dismiss stage. *Id.* The Court also held that "the first (and most important) *TRAC* factor" supported the defendants because although the plaintiff had "been waiting for just over four years for adjudication of his asylum application," the defendants, as here, had "provided a clear reason for the delay—it is a result of the LIFO [last in first out] policy, which USCIS implemented to address a critical backlog in asylum applications. Courts in the Ninth Circuit and beyond have consistently found this to satisfy the first *TRAC* factor's rule-of-reason requirement." *Id.* at *9. The Court next held that the "second factor is neutral" because "[a]lthough § 1158 provides a timetable for adjudication of asylum applications, 'the timetable, while clear, does not outweigh the rule of reason which supports the USCIS policies which have caused the challenged delays.'" *Id.* (citation omitted). The same is true here.[3] Finally, the Court held that "the remaining *TRAC* factors do not require extensive discussion" and that they "either favor Defendants or are neutral and do not, at any rate, cut so decisively in

---

[3] The plaintiff in *Kayiranga* had, as of the date of the dismissal order, been waiting for just over four years for adjudication of his asylum claim, whereas Plaintiffs have now been waiting just over five years. (Doc. 1 ¶ 18.) Nevertheless, Plaintiffs "[have] not presented compelling reasons for why five and a half years is a particularly unreasonable delay, given that courts have held that delays of similar lengths under similar circumstances are reasonable." *Pichkurova v. Los Angeles Asylum Off.*, 2025 WL 3763370, *4 (C.D. Cal. 2025).

Plaintiff's favor as to support a plausible entitlement to relief in light of the resolution of the first (and most important) factor in Defendants' favor." *Id.* Once again, the same analysis applies here.

For the reasons articulated in *Kayiranga*, Plaintiffs' claims in Counts One and Five are subject to dismissal under Rule 12(b)(6). At bottom, the facts and legal issues in this case are a near-carbon copy of those already addressed in *Kayiranga*.

B.     **Counts Two, Three, And Four**

This leaves Plaintiffs' claims in Counts Two, Three, and Four. In those claims, Plaintiffs do not directly challenge USCIS's *delay* in adjudicating their asylum application (which is the premise of their § 706(1) challenge in Count One). Instead, Plaintiffs challenge USCIS's decision to *adopt* the LIFO policy, which they contend is actionable under § 706(2). (Doc. 1 ¶¶ 46-58.)

Defendants argue that Counts Two, Three, and Four are subject to dismissal because they are "duplicative" of Plaintiffs' § 706(1) claim in Count One and because "[t]o plead a § 706(2) claim, a plaintiff must show harm by 'final agency action'" but "Plaintiffs concede that Plaintiffs' application has not received final agency action." (Doc. 7 at 17.) Plaintiffs do not address this argument in their response brief—instead, they focus on their theory of unreasonable delay. As a result, Plaintiffs have arguably forfeited any defense of Counts Two, Three, and Four. *Infracost Inc. v. Blinken*, 732 F. Supp. 3d 1240, 1250-51 (S.D. Cal. 2024) ("Plaintiffs' central contention is that Defendant has unreasonably delayed the final adjudication of Hosseini's visa application in violation of 5 U.S.C. § 706(1) and/or the Mandamus Act . . . [a]nd nowhere in the Opposition do Plaintiffs . . . discuss claims based in other prongs of the APA. Given Plaintiffs' failure to defend claims other than those sounding in unreasonable delay, the Court deems abandoned any potential claim under 5 U.S.C. § 706(2) . . . .").

Those claims are also subject to dismissal for other reasons. As an initial matter, many courts have concluded—as Defendants argue here—that a § 706(2) challenge to the adoption of the LIFO policy is just another way of asserting a § 706(1) challenge to the

delay in adjudicating a particular asylum application, and thus the § 706(2) challenge should rise and fall with the § 706(1) challenge. *See, e.g.*, *S.L. v. U.S. Citizenship & Immigr. Servs.*, 2025 WL 2959313, *8 (E.D.N.Y. 2025) ("Plaintiff's argument that the LIFO policy is arbitrary and capricious similarly boils down to a claim of unreasonable delay and thus fails."); *Singh v. U.S. Citizenship & Immigr. Servs.*, 2025 WL 1489804, *3-4 (E.D.N.Y. 2025) ("Plaintiff's claims under Section 706(2) of the APA fail for the same reasons as his Section 706(1) claim. . . . [P]laintiff challenges the *absence* of agency action: the missing adjudication of his asylum application. Because plaintiff ultimately seeks to compel the adjudication of his asylum application, his APA claims under Section 706(2) are substantively the same as his claims under Section 706(1). They thus fail for the same reasons.") (cleaned up).

Moreover, even assuming that a § 706(2) challenge to the adoption of the LIFO policy isn't subject to dismissal under the theory that it is duplicative of a § 706(1) challenge to the delayed adjudication of a particular asylum application, Counts Two, Three, and Four fail on their own terms. "To bring a claim under 5 U.S.C. § 706(2), plaintiffs must identify a final agency action upon which the claim is based." *Hells Canyon Preservation Council v. U.S. Forest Serv.*, 593 F.3d 923, 930 (9th Cir. 2010). To determine whether agency action is "final," courts in the Ninth Circuit apply the two-part test from *Bennett v. Spear*, 520 U.S. 154 (1997): first, the action must "mark the consummation of the agency's decision-making process"; and second, the action must "determine rights or obligations or be one from which legal consequences will flow." *Envt'l Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 867-68 (9th Cir. 2022) (cleaned up). As courts have concluded, USCIS's adoption of the LIFO policy does not qualify as "final agency action" under the second prong of this test[4] because it does not determine rights or obligations or otherwise cause legal consequences to follow. *See, e.g.*, *Garcia Maltez v. U.S. Dep't of*

---

[4] To be clear, the "final agency action" analysis differs from the analysis, discussed above in relation to Counts One and Five, as to whether particular agency action is "discrete" in the manner required to state a § 706(1) claim.

*Homeland Sec.*, 2026 WL 1649162, *2 (D.N.J. 2026) ("Plaintiff's claim fails on the second prong as the LIFO system does not determine Plaintiff's rights or obligations."); *Mutlu v. Mayorkas*, 2024 WL 4117329, *2 (D.N.J. 2024) ("Plaintiff's claim fails on the second prong as neither his rights nor his obligations are determined by the USCIS's preferred policy for scheduling asylum interviews. The criteria for determining whether Plaintiff is entitled to asylum remains the same, and LIFO merely guides the USCIS in scheduling these interviews.").

Alternatively, even if the adoption of the LIFO policy did qualify as final agency action, Plaintiffs would need to establish that the policy is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. But as discussed in Part III.A above and in *Kayiranga*, USCIS implemented the LIFO policy to address a critical backlog in asylum applications, and courts in the Ninth Circuit and beyond have consistently found this to satisfy the first *TRAC* factor's rule-of-reason requirement. This provides an additional reason why any § 706(2) challenge is unavailing. *See, e.g., Singh v. U.S. Citizenship & Immigr. Servs.*, 2025 WL 964145, *6 (E.D.N.Y. 2025) ("Defendants argue that, because courts have already held that the LIFO policy is a 'rule of reason,' Plaintiff's claims that the policy is arbitrary, unlawful, or exceeds statutory authority also fail. The Court agrees.") (citation omitted).

IV.    Leave To Amend

The decision whether to grant leave to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* Thus, leave to amend should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

As noted in *Kayiranga*, "[l]eave to amend is unwarranted here because the

Complaint is being dismissed based on deficiencies that could not be cured through the pleading of new facts. However, the Court clarifies that the dismissal is without prejudice, such that Plaintiff[s] may bring a future action if the delay persists." 2025 WL 4036696 at *9 (citations omitted).

Accordingly,

**IT IS ORDERED THAT**:

1.    Defendants' motion to dismiss (Doc. 7) is **granted**.

2.    The complaint (Doc. 1) is dismissed without prejudice and without leave to amend. The Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 15th day of July, 2026.

_____
Dominic W. Lanza
United States District Judge

- 10 -